# IN THE UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

No. 97-50587
Summary Calendar

VASILIOS A.  KARAGOUNIS, M.D., Ph.D.,

Plaintiff-Appellant,

versus

UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER
AT SAN ANTONIO; UNIVERSITY HOSPITAL

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Texas
USDC No.  SA-95-CA-799

January 5, 1999

Before KING, BARKSDALE, and STEWART, Circuit Judges.

PER CURIAM:[*]

Plaintiff-appellant Vasilios A.  Karagounis brought this Title VII action, alleging sex and national origin employment discrimination, against defendants-appellants the University of Texas Health Science Center at San Antonio ("UTHSC-SA") and Bexar County Hospital District d/b/a University Hospital ("District").  The district court granted summary judgment in favor of the District, and a jury trial resulted in a verdict in favor of UTHSC-SA.  Karagounis argues on appeal that the district court should not have entered summary judgment for the District, that the district court should have excluded certain exhibits at trial while admitting others, that the district court committed reversible error in its response to a question asked by the jury, and that the district court

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR R. 47.5.4.

erred in denying his motion for a new trial. For the reasons set forth below, we AFFIRM the district court's decisions in this case.

**FACTUAL & PROCEDURAL BACKGROUND**

Karagounis was a fourth year general surgery resident at UTHSC-SA at the time of the alleged incidents. By way of background, the general residency training program is a five year program, with each year beginning in July and ending in late June. Prior to becoming a fifth year "chief" resident, fourth year "senior" residents are expected to score above the 40th percentile on the American Board of Surgery In-Training Examination. Karagounis scored in the 38th percentile.

Residents who fell below the minimum score on the Board examinations were required to undergo an oral examination. Karagounis's oral examination was given by three teams of physicians. The first team gave him a four, which was a failing grade. The second team initially gave him a five, which was a conditionally passing grade, but after discussion decreased his grade to a four. The third team did not give him a numerical grade, but instead informed him that he failed his oral examination. At that point, Karagounis was told that he would be retained in the General Surgery residency program, but that he would have to repeat his fourth year on a probationary basis, beginning in July 1995.

Karagounis's first rotation during this probationary period was in vascular transplants. His performance was rated as unsatisfactory by both faculty members running the rotation. As a result, he was told in August 1994 that he was dismissed from the program, effective December 31, 1994. He participated in two more rotations, in both of which his performance was considered unsatisfactory. On December 31, 1994, Karagounis was officially discharged from UTHSC-SA's general surgery residency program.

In June 1995, Karagounis filed suit against UTHSC-SA and the District claiming that they intentionally discriminated against him by terminating him from the general surgery residency program because of his Greek national origin and his male gender. Both defendants-appellees filed motions

2

for summary judgment. The district court granted summary judgment in favor of the District on the grounds that this defendant was not Karagounis's employer, but denied UTHSC-SA's motion for summary judgment. The remaining portion of the case went to trial, at the conclusion of which the jury returned a verdict for UTHSC-SA   Karagounis filed a motion for a new trial, which was subsequently denied by the district court. This appeal followed.

## DISCUSSION

### I.

Karagounis first attacks the district court's decision granting summary judgment to the District on the ground that it was not his employer within the meaning of Title VII. To establish Title VII liability on the part of a particular defendant, Karagounis must prove, inter alia, that an employment relationship existed between him and that defendant. See Deal v. State Farm County Mutual Ins. Co., 5 F.3d 117, 118 (5th Cir. 1993).

One way to effectively bypass this requirement is to prove that the defendant in question is sufficiently interrelated with another defendant. The plaintiff can show that the two defendants are so integrated so as to be considered a "single employer." See Radio and Televison Broadcast Technicians Local Union 1264 v. Broadcast Service of Mobile, Inc., 380 U.S. 255 (1965); Trevino v. Celanese Corporation, 701 F.2d 397, 403-04 (5th Cir. 1983). The plaintiff can also show that the defendant in question exercises such control over the labor relations of the other defendant that they together should be considered "joint employers." See Boire v. Greyhound Corp., 376 U.S. 473 (1964); Trevino, 701 F.2d at 403.

In this case, the District moved for summary judgment and argued that it was not Karagounis' employer for purposes of Title VII. The district court granted summary judgment after holding Karagounis could not as a matter of law prove that the District and UTHSC-SA should be considered a single employer. The court premised its ruling on our decision in Trevino v. Celanese Corporation, 701 F.2d 397, 404 n.10 (5th Cir. 1983) (citing Dumas v. Town of Mt. Vernon, 612 F.2d 974, 979

3

n.9 (5th Cir. 1980)), in which we held that the single employer theory was not applicable when one of the defendants in question was a governmental subdivision.**

On appeal, Karagounis effectively concedes he must rely upon one of the three aggregation theories to have the District considered an employer. He also concedes the district court was correct to foreclose his single employer argument. However, Karagounis argues the district court did not consider his theory that the District and UTHSC-SA should be considered joint employers under the Boire doctrine. He submits that our decision in Trevino only applies to the single employer theory and not to the joint employer doctrine.

We disagree. It is important to remember that the two theories are very closely related. When determining whether two defendants should be considered a single employer, we look to four factors: (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; (4) and common ownership or financial control. See Trevino, 701 F.2d at 404. The second factor of this inquiry is by far the most important. See id. Similarly, when determining whether two defendants should be considered a joint employer, we look to the control one defendant has over the other's labor relations. See, e.g., Triche v. Crescent Turnkey & Engineering, No. Civ. A. 97-2657, 1998 WL 139986, at *1 n.3 (E.D. La. March 25, 1998). In other words, the core analysis of these two inquires are virtually identical. See, e.g., Mochelle v. J. Walter Inc., 823 F. Supp. 1302 (M.D. La. 1993). Given the similarities between the two, we are constrained by Trevino to hold that the governmental subdivision rule we applied within the single employer doctrine also applies to the joint employer theory. To hold otherwise would, in effect, allow an end run around the

---

**In Dumas, we set forth the governmental subdivision rule without explaining the rationale behind it. See Dumas, 612 F.2d at 980 n.9. Three years later in Trevino, we offered some insight into our reasoning by observing "[a]s articulated, the standard is not readily applicable to governmental subdivisions, for it was 'developed by the National Labor Relations Board to determine whether consolidation of separate private corporations is proper in determining the relevant employer for purposes of enforcing the National Labor Relations Act.'" Trevino, 701 F.2d at 404 n.10 (citation omitted). Other judges have seen Dumas in a different light than we did in Trevino. See Lyes v. City of Riviera Beach, 126 F.3d 1380, 1384-85 (11th Cir. 1997) (bound by Dumas but not Trevino), vacated for en banc review, 136 F.3d 1295 (11th Cir. 1998); Massey v. Emergency Assistance, Inc., 724 F.2d 690, 692 (8th Cir. 1984) (Lay, C.J., dissenting).

precedent we established in <u>Dumas</u> and <u>Trevino</u>.  We therefore affirm the district court's grant of summary judgment.

**II.**

Karagounis next argues that the district court erred in admitting three resident evaluation forms prepared by UTHSC-SA faculty after the decision to dismiss him had been made.  We review evidentiary rulings for abuse of discretion, <u>see, e.g., Big John, B.V. v.  Indian Head Grain Co.</u>, 718 F.2d 143, 146 (5th Cir.  1983), and will reverse only if the error caused substantial prejudice.  <u>See, e.g., Smith v. Wal-Mart Stores</u>, 891 F.2d 1177, 1180 (5th Cir. 1990).  We affirm.  Karagounis was permitted to argue to the jury that these evaluations were unreliable because of the date they were prepared.  On these facts, we cannot say the admission of this evidence caused substantial prejudice to Karagounis.

**III**.

Karagounis also contends that the district court erred in responding to a question posed by the jury during its deliberations.  The jury sent the following question to the district court:

What date was the lawsuit presented to the UT Health Science Center at S.A.?

The district court responded to this question with the following reply:

> Your question, "What date was the lawsuit presented to the UT Health Science Center at S.A." seeks information that is not relevant to any factual issue that you must determine in this case.  Again, please follow the instructions given to you by the Court.

Although conceding that a direct answer to this question – June 28, 1995 – would not have helped his case in any way, Karagounis suggests that we can infer that the jury was posing this question so as to better evaluate the veracity of those who prepared his post-dismissal residency evaluations.  On

5

appeal, therefore, Karagounis appears to argue that the district court's response should have been to provide not only the answer to the jury's question, but additional information which the jury had not directly asked for but could reasonably be expected to desire.

We need not reach this issue. UTHSC-SA correctly observes that Karagounis did not object on the ground that the response should have been to provide the correct answer. Rather, he objected on the ground that "a neutral response should be given that they are to follow evidence as they heard it without commenting on relevance or non-relevance of the evidence." In confining his objection to the "neutrality" of the district court's response, he waived his objections as to the substance of the district court's response. See, e.g., First National Bank of Louisville v. Lustig, 96 F.3d 1554, 1571 n.14 (5th Cir. 1996). On appeal, Karagounis does not contest the district court's decision to overrule his "neutrality" objection, and that too is therefore waived. See, e.g., Melton v. Teachers Ins. & Annuity Assoc. of America, 114 F.3d 557, 560 (5th Cir. 1997).

**IV.**

Karagounis also submits that the district court erred in admitting two resident evaluation summaries prepared by the director of the residency program because they were not factually accurate. In making this claim, Karagounis relies on our decision in Wright v. Southwest Bank, 554 F.2d 661 (5th Cir. 1977) in which we remanded a grant of summary judgment on the ground that the summaries relied upon by the district court were incompetent. However, Wright is inapplicable to the case at bar. In Wright, the district court judge relied on evidence submitted to the court three weeks after the bench trial was concluded. See id. at 662. More importantly, the evidence was submitted ex parte, meaning that the plaintiff was never provided the opportunity to test the competency of the relied upon evidence. See id. In contrast, Karagounis was provided ample opportunity to test the accuracy of the submitted evidence in the district court. Furthermore, after reviewing the factual claims made by plaintiff on appeal, we cannot say the district court abused its discretion in admitting this evidence. We therefore affirm.

6

## V.

Karagounis further claims that the district court erred in excluding as testimony a portion of an audio taped conversation between himself and Dr. J. Bradley Aust, which Karagounis covertly recorded. He did not attempt to admit this excerpt during the case-in-chief, but instead attempted to do so during the rebuttal portion of the trial. The most relevant portion of the conversation Karagounis points to as evidence of direct discrimination is Aust's statement that:

> So really, I need to have you tell me, what can I do to help you find something else? Are you going back to Greece? Are you going to find another spot here? What are you going to do? What can we do to help you? I don't think you should be in surgery. That's my view. On the basis of what the rest of the faculty tells me. I'm very concerned.

The district court did not abuse its discretion in excluding this testimony. While it has a reference to the plaintiff's national background, in context the statement is innocuous and not evidence of discrimination. In particular, we note that Aust immediately followed his question of whether Karagounis was planning to return to Greece with a question of whether he was planning to stay in America. If anything, the statement in its entirety shows Aust's honest assessment of Karagounis and his ultimate concern for Karagounis' placement after he left the residency program. On these facts, we cannot say the district court's decision substantially prejudiced Karagounis' case.

## VI.

Finally, Karagounis argues that the district court erred in denying his motion for a new trial. We will reverse a district court's decision denying a new trial motion only if the court abused its discretion or misapprehended the law. See, e.g., Dixon v. International Harvester Co., 754 F.2d 573, 586 (5th Cir. 1985). Karagounis' argument is premised on the claim that counsel for UTHSC-SA fraudulently talked his attorney out of playing audio tapes of conversations between himself and several UTHSC-SA faculty members. He offers no support for this claim except his personal suspicions. As the district court correctly observed, plaintiff neither explains how defense counsel

7

fraudulently induced his attorney, nor specifies the basis for his allegations. Karagounis only cites to the fact that his attorney decided not to play the audio tapes after a conversati on with defense counsel.

The district court certainly did not abuse its discretion in refusing to presume a conversation between two licensed attorneys contained fraud. As such, we dismiss this claim as entirely without merit, and affirm the district court's decision to deny the new trial motion without an evidentiary hearing.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's decisions.